**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    v.

CRAIG D. PERCIAVALLE,
JOSEPH A. RUNKEL, and
WILLIAM O. ADAMS,

          Defendants.

Criminal Action No. 1:23-CR-00070-JB-N

**<u>DEFENDANTS' SECOND JOINT MOTION TO DISMISS THE INDICTMENT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ALLEGATIONS ................................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

   I.   The Indictment is Untimely on its Face Under a Five-Year Statute of Limitations. ........... 4

   II.   Counts 1, 7, and 8 Are Not Subject to the Ten-Year Statute of Limitations Under 18 U.S.C. § 3293(2) Despite Being Pled as Wire Fraud Offenses "Affecting a Financial Institution." ..... 6

     A.   Section 3293(2)'s "affects a financial institution" language is subject to multiple plausible interpretations. ...................................................................................................... 9

     B.   The statutory scheme surrounding, and legislative history underlying, § 3293(2) supports the narrower interpretation of "affects." ................................................................. 11

     C.   The substantive effect of the narrower interpretation of § 3293(2) is more compatible with the statutory scheme than the broader interpretation. ................................................... 13

     D.   Should any doubt remain that the narrower interpretation is required over the broader interpretation of § 3293(2), that doubt must be construed in favor of the narrower construction. ............................................................................................................................... 14

   III.   ████████████████████████████████████████

████████████████████████████████████████████

  █  ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

  █  ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

CONCLUSION ....................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Harrison v. Vose*, 50 U.S. 372 (1850) ......................................................................... 15

*Hill v. Blue Cross Blue Shield*, 117 F. Supp. 2d 1209 (N.D. Ala. 2000) ......................... 8

*In re Employment Discrimination Litigation*, 198 F.3d 1305 (11th Cir. 1999) ............................. 8

*INS v. Nat'l Ctr. for Immigrants' Rights*, 502 U.S. 183 (1991) ...................................... 12

*Kelly v. United States*, 590 U.S. 391 (2020) ..................................... 1, 7, 10, 12, 13, 14

*McNally v. United States*, 483 U.S. 350 (1987) ........................................................ 10

*Nelson v. United States*, Nos. 04-560-CB-M, 04-561-CB-M, 04-562-CB-M, 04-563-CB-M, 2005 WL 5783768, 2005 U.S. Dist. LEXIS 45661 (S.D. Ala. Dec. 13, 2005) ...................... 8

*Rivers v. Roadway Express*, 511 U.S. 298 (1994) ....................................................... 8

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ....................................................9, 11

*Smith v. United States*, 568 U.S. 106 (2013) ............................................................. 3

*Toussie v. United States*, 397 U.S. 112 (1970) ........................................ 3, 4, 13, 14, 15

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988) ............11, 13

*United States v. Anghaie*, No. 1:09-CR-37-SPM AK, 2011 U.S. Dist. LEXIS 23863, 2011 WL 720044 (N.D. Fla. Feb. 21, 2011) ........................................................................ 4

*United States v. Brody*, 621 F. Supp. 2d 1196 (D. Utah 2009) ................................. 17, 18

*United States v. Csolkovits*, No. 08-cr-20474, 2012 U.S. Dist. LEXIS 14314, 2012 WL 395450 (E.D. Mich. Feb. 7, 2012) .................................................................................. 17, 18

*United States v. Feldman*, 931 F.3d 1245 (11th Cir. 2019) ........................................... 5

*United States v. Gaudreau*, 860 F.2d 357 (10th Cir. 1988) ......................................... 5

*United States v. Habig*, 390 U.S. 222 (1968) ..................................................... 4, 15, 20

*United States v. Harriston*, 329 F.3d 779 (11th Cir. 2003) ........................................... 5

*United States v. Hossein Kalani Afshari*, No. CR 01-209(C)-DOC, 2009 U.S. Dist. LEXIS 31582, 2009 WL 1033798 (C.D. Cal. Apr. 14, 2009) ........................................................ 18

*United States v. Khoury*, No. 4:08-CR-0763, 2019 U.S. Dist. LEXIS 210500, 2019 WL 6687715 (S.D. Tex. Dec. 6, 2019) ...................................................................................... 18

*United States v. Kozeny*, 541 F.3d 166 (2d Cir. 2008) ...................................... 15, 17, 18, 19

*United States v. Lee*, 667 F. Supp. 1404 (D. Colo. 1987) .............................................. 5

*United States v. Martin*, 803 F.3d 581 (11th Cir. 2015) ..........................................7, 11

*United States v. Munoz*, 430 F.3d 1357 (11th Cir. 2005) ............................................. 23

*United States v. Open Boat*, 27 F. Cas. 354, F. Cas. No. 15968 (No. 15,968) (CC Me. 1829) ..... 16

*United States v. Pelullo*, 964 F.2d 193 (3d Cir. 1992) ..............................................11

*United States v. Pub. Utils. Com.*, 345 U.S. 295 (1953) .............................................. 12

*United States v. Ramirez*, 324 F.3d 1225 (11th Cir. 2003) ........................................... 3

*United States v. Rojas*, 718 F.3d 1317 (11th Cir. 2013) ............................................ 3, 7

*United States v. Salman*, 378 F.3d 1266 (11th Cir. 2004) ............................................. 3

*United States v. Scharton*, 285 U.S. 518 (1932) ........................................... 4, 14, 15, 21

*United States v. Torres*, 318 F.3d 1058 (11th Cir. 2003) ............................................ 20

*United States v. Ward*, 486 F.3d 1212 (11th Cir. 2007) ............................................... 5

*United States v. Winslow*, No. 23-12230, 2024 U.S. App. LEXIS 19010, 2024 WL 3595909 (11th Cir. July 31, 2024) .......................................................................................... 16

*Wooden v. United States*, 595 U.S. 360 (2022) ........................................................ 15

**Statutes**

18 U.S.C. § 1343 ................................................................................................. 6, 10
18 U.S.C. § 20 ........................................................................................................ 23
18 U.S.C. § 3282 ............................................................................................ 1, 4, 14
18 U.S.C. § 3292 ......................................................................................... 1, 16, 20
18 U.S.C. § 3293 ............................................................................................... 6, 10
Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. 101–
    73, 103 Stat. 183 ............................................................................................... 9

**Other Authorities**

H.R. Rep. No. 101-54 (1989) ............................................................................ 10, 12
H.R. Rep. No. 98-907 (1984), reprinted in 1984 U.S.C.C.A.N. 3578, 3578 ............................... 20
U.S. Gov't Accountability Office, GAO/T-GGD-90-61, Savings and Loan Crisis: Federal
    Response to Fraud in Financial Institutions (1990) ................................................... 9

Defendants Craig Perciavalle, Joseph Runkel, and William Adams (collectively, "defendants"), by their counsel, hereby jointly move the Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), to dismiss the indictment based on the expiration of the statutes of limitations applicable to each charge. In support of this joint motion, defendants rely on the following points and authorities, and any other points and authorities that may be cited in their reply filing and at a hearing on this motion.

## INTRODUCTION

A grand jury returned the indictment on March 30, 2023 alleging wire fraud and conspiracy to commit wire fraud based on conduct alleged to have occurred between seven and ten years prior. The indictment was brought well outside the five-year statute of limitations that ordinarily applies to such offenses "except as otherwise expressly provided by law . . . ." 18 U.S.C. § 3282. Defendants expect the government will attempt to invoke two such exceptions here: first, by arguing Counts 1, 7, and 8 are subject to the ten-year statute of limitations available under 18 U.S.C. § 3293(2) for a wire fraud offense that "affects a financial institution," and second, ███████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

Neither exception applies to the charges alleged in the indictment. The ten-year statute of limitations in 18 U.S.C. § 3293 does not extend to Counts 1, 7, or 8 because the only construction of this statute that is reconcilable with the Supreme Court's decision in *Kelly v. United States*, 590 U.S. 391 (2020), is that it extends only to schemes with financial institution money or property as their object, which the government admittedly does not allege here. ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████.[1]

Because neither exception to the general five-year statute of limitations applies, all counts are untimely and must be dismissed.  This basis for dismissal exists independently of the grounds for dismissal stated in Defendants' first Motion to Dismiss (Doc. 129), which is also due to be granted.

## ALLEGATIONS

As set out in Defendants' first Motion to Dismiss, Doc. 129, the indictment charges the defendants with wire fraud, wire fraud affecting a financial institution, and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, based on allegations that the defendants intentionally provided to the Austal USA, LLC ("Austal USA") board, Austal Limited, and the company's independent auditors false estimates of the future costs necessary to complete certain Littoral Combat Ships (LCS), resulting in Austal Limited's over-recognition of revenue and profits in financial reporting periods between 2013 and mid-2016.  Doc. 1 at PageID.6-11, ¶¶ 15-30. According to the indictment, the purpose of the scheme to defraud was for the defendants "to mislead Austal Limited's shareholders and the investing public about Austal USA's financial condition and the performance of the LCS program in order to (a) maintain and increase the share price of Austal Limited's stock; and (b) unjustly enrich [the defendants] and others through the continued receipt of compensation, stock, and other benefits."  *Id.* at PageID.5, ¶ 14.  Finally, the

---

[1] The government's ████████████ remain sealed as a component of the grand jury investigation preceding this indictment.  Accordingly, defendants have filed a publicly available version of this motion with partial redactions to any references to these proceedings and will move for leave to file under seal a separate unredacted version of this motion for the Court's review.

alleged scheme purportedly affected financial institutions because Austal Limited provided the misleading FY 2014 and FY 2015 financial statements to two banks prior to entering a syndicated facility agreement ("SFA") with the banks for approximately $105 million in October 2015. The government alleges these banks required the financial information from Austal Limited in order to assess the level of credit risk and fees they would charge in connection with the SFA. *Id.* at PageID.12-13, ¶¶ 34-37.

## **LEGAL STANDARD**

A statute of limitations defense that "is clear on the face of the indictment and requires no further development of facts at trial" is considered a challenge to the sufficiency of the indictment that must be raised in a pretrial motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. *United States v. Ramirez*, 324 F.3d 1225, 1227 (11th Cir. 2003). In ruling on such a motion, the "sufficiency of a criminal indictment is determined from its face." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (quotations and citation omitted).

Importantly, "[t]he United States Supreme Court has stated that statutes of limitations 'are to be liberally interpreted in favor of repose.'" *United States v. Rojas*, 718 F.3d 1317, 1319 (11th Cir. 2013) (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)). "A statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill suited for prosecution." *Smith v. United States*, 568 U.S. 106, 112 (2013). "The Government need not allege the time of the offense in the indictment, and it is up to the defendant to raise the limitations defense." *Id.* (internal citations omitted).

## ARGUMENT

I.    **The Indictment is Untimely on its Face Under a Five-Year Statute of Limitations.**

Non-capital criminal offenses are generally subject to a five-year statute of limitations under 18 U.S.C. § 3282(a), which provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."   Through this statute, "Congress has declared a policy that the statute of limitations should not be extended 'except as otherwise expressly provided by law.'" *Toussie*, 397 U.S. at 115 (quoting 18 U.S.C. § 3282).  As the Supreme Court has further explained, this statute of limitations reflects Congress's policy judgment on multiple fronts:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose,'" *United States v. Scharton*, 285 U.S. 518, 522 (1932)." *United States v. Habig*, 390 U.S. 222, 227 (1968).

*Toussie*, 397 U.S. at 114–15.

Statutes of limitations "normally begin to run when the crime is complete." *Id.* (citation omitted).  Here, seven of the eight charges (Counts 2–8) allege violations of 18 U.S.C. § 1343 (wire fraud).  The statute of limitations on each of these charges began to run from the date of the wire transmission that is the basis of the charge. *United States v. Anghaie*, No. 1:09-CR-37-SPM AK, 2011 U.S. Dist. LEXIS 23863, at *4, 2011 WL 720044 (N.D. Fla. Feb. 21, 2011) ("[A]s each wire transmission or financial transaction constitutes a separate offense, the limitations period

began to run from the date of each transmission or transaction."); *United States v. Lee*, 667 F. Supp. 1404, 1416 (D. Colo. 1987), *rev'd in part on other grounds sub nom. United States v. Gaudreau*, 860 F.2d 357 (10th Cir. 1988) ("In a mail fraud prosecution, the statute of limitations begins to run from the date of mailing.").[2]

Under this framework, based on the dates of the wire transmissions alleged in the indictment, a five-year statute of limitations for each of the substantive wire fraud charges expired on the following respective dates:

| Count | Date of Alleged Wire | Five Years |
|-------|---------------------|------------|
| Count 2 | April 17, 2015 | April 17, 2020 |
| Count 3 | July 22, 2015 | July 22, 2020 |
| Count 4 | July 29, 2015 | July 29, 2020 |
| Count 5 | August 25, 2015 | August 25, 2020 |
| Count 6 | February 19, 2016 | February 19, 2021 |
| Count 7 | July 29, 2014 | July 29, 2019 |
| Count 8 | August 18, 2014 | August 18, 2019 |

As reflected above, each wire fraud charge expired under a five-year statute of limitations long before the indictment's return on March 30, 2023.

Count 1, alleging a conspiracy to commit wire fraud and wire fraud affecting a financial institution, fares no better under a five-year statute of limitations. A wire-fraud conspiracy charge under 18 U.S.C. § 1349 "does not require the commission of an overt act," *United States v. Feldman*, 931 F.3d 1245, 1258 (11th Cir. 2019) (citation omitted), and "[t]he government satisfies the requirements of the statute of limitations for a non-overt act conspiracy if it alleges and proves that the conspiracy continued into the limitations period." *United States v. Harriston*, 329 F.3d 779, 783 (11th Cir. 2003). "[A] conspiracy is deemed to have continued as long as the purposes

---

[2] "Because the 'scheme or artifice to defraud' and 'for the purpose of executing' language in the mail and wire fraud statutes are construed identically, we borrow freely from cases construing Section 1341 mail fraud in analyzing wire fraud under Section 1343." *United States v. Ward*, 486 F.3d 1212, 1222 n.5 (11th Cir. 2007) (internal quotations and citation omitted).

of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy has terminated*." Id*.

Under the government's theory here, the alleged purpose of the conspiracy was abandoned at the latest through the July 4, 2016 market announcement identified in the indictment when "Austal Limited reported that it expected to record a significant EBIT (Earnings Before Interest and Taxes) loss in fiscal year 2016, which the company primarily attributed to a 'US$115 million . . . one off write back of work in progress . . . required to recognize an increase in the cost of construction' of the LCS ships," which resulted in "the share price of Austal Limited's stock [being] significantly negatively impacted." Doc. 1, PageID.11 at ¶ 32. Based on a July 4, 2016 accrual date, any wire-fraud conspiracy charge must have been brought by July 4, 2021 under a five-year statute of limitations—nearly two years before the indictment was returned on March 30, 2023.

In sum, under a five-year statute of limitations all counts are untimely by between four and two years, which governs unless the government can demonstrate an exception to 18 U.S.C. § 3282(a) applies. The remainder of this motion addresses the two exceptions defendants anticipate the government may seek to invoke, neither of which applies.

## II.    Counts 1, 7, and 8 Are Not Subject to the Ten-Year Statute of Limitations Under 18 U.S.C. § 3293(2) Despite Being Pled as Wire Fraud Offenses "Affecting a Financial Institution."

A wire fraud offense that "affects a financial institution" involves more severe penalties under 18 U.S.C. § 1343 (thirty-year maximum term of imprisonment instead of twenty-year maximum and $1,000,000 maximum fine instead of $250,000 fine for individual where offense "affects a financial institution"), and a ten-year statute of limitations under 18 U.S.C. § 3293(2) instead of the ordinary five-year statute of limitations under § 3282(a). The phrase "affects a

financial institution" is not defined in either of these statutes or elsewhere.  However, in 2015 the Eleventh Circuit held that exposing a financial institution to "an increased risk of loss" is sufficient to satisfy § 1343's "affect[ing] a financial institution" element for purposes of the increased custodial penalty, *United States v. Martin*, 803 F.3d 581, 587–88, 590 (11th Cir. 2015), and in a 2020 unpublished opinion, *United States v. Rojas*, 824 Fed. Appx. 600, 602 (11th Cir. 2020), a panel from the Eleventh Circuit extended *Martin*'s "risk of loss" standard to the "affects a financial institution' language in . . . § 3293(2)."  824 Fed. Appx. at 604.

Defendants expect the government will seek to invoke § 3293(2)'s ten-year statute of limitations with respect to Counts 1, 7, and 8, which allege charges of conspiracy to commit wire fraud affecting a financial institution (Count 1) and wire fraud affecting a financial institution (Counts 7 and 8).  Doc. 1, PageID.14, 18, at ¶¶ 40(b), 51.  As to its theory of "affects," the indictment alleges two financial institutions (Bank 1 and Bank 2) were "affected" because, prior to entering a syndicated facility agreement ("SFA") with these institutions, "Austal Limited was required to report certain financial figures to the banks so the banks could make reasonable determinations with regard to the level of credit risk and the fees to be charged in connection with the SFA" and these banks were ultimately provided with "financial statements for fiscal years 2014 and 2015 that falsely overstated Austal USA's and Austal Limited's earnings by millions of dollars by using artificially suppressed EACs for the LCS program."  *Id.* at PageID.12–13, ¶¶ 35, 37.

While the government may argue the indictment's allegations satisfy the "increased risk of loss" standard applied in *Martin*, this construction of § 3293(2) is not reconcilable with the central tenet of the Supreme Court's more recent 2020 decision in *Kelly v. United States*, 590 U.S. 391 (2020).  There,  the Supreme Court recognized a wire "fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme" because "fraudulent schemes

7

violate [the wire fraud statute] only when . . . they are 'for obtaining money or property,'" so "that property must play more than some bit part in a scheme: It must be an 'object of the fraud.'" 590 U.S. at 402.

As set forth below, *Kelly*'s clarification on the limited scope of the wire fraud statute[3] requires—contrary to *Martin*'s "increased risk of loss" standard[4]—that § 3293(2) be applied only to wire fraud violations that have a financial institution's money or property as the *object* of the scheme to defraud. And here, the indictment alleges no such object. On the contrary, the government acknowledged in its response to the first motion to dismiss that it "agrees that the object of the scheme as alleged in the indictment was not to obtain the money or property of the

---

[3] As the Supreme Court has expressed, it "is this Court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express*, 511 U.S. 298, 312–13 (1994).

[4] While a district court is ordinarily "bound to follow the holding of a prior decision of the Court of Appeals for the circuit in which the district court is located until that binding precedent is expressly overruled," in "rare instances in which a subsequent decision of the Court of Appeals sitting *en banc* implicitly overrules a prior precedent, making it clear that the reasoning and decision of the Court of Appeals would have been different under the new precedent, a lower court may be forced to treat the precedent form the Court of Appeals as having been overruled. . . . This approach would apply to an intervening decision of the Supreme Court, as well, where the intervening decision is clearly contrary to the prior panel precedent." *Nelson v. United States*, Nos. 04-560-CB-M, 04-561-CB-M, 04-562-CB-M, 04-563-CB-M, 2005 WL 5783768, 2005 U.S. Dist. LEXIS 45661, at *11 (S.D. Ala. Dec. 13, 2005). *Cf. Hill v. Blue Cross Blue Shield*, 117 F. Supp. 2d 1209, 1210 (N.D. Ala. 2000) ("It is, of course, well settled that 'where precedent binding upon this court [the Eleventh Circuit] cannot be reconciled with a subsequent Supreme Court decision, we must defer to the Supreme Court.'") (*quoting In re Employment Discrimination Litigation*, 198 F.3d 1305, 1319 (11th Cir. 1999)).

banks, but rather Austal Limited's shareholders and the investing public." Doc.131, PageID.573 n.3 (emphasis in original).[5]

### A.    Section 3293(2)'s "affects a financial institution" language is subject to multiple plausible interpretations.

The Court's "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). This determination is not made by looking at the statutory term in isolation; rather it requires "reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* The Court's "inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (quotations and citation omitted). Applying these considerations, there is indeed an ambiguity in the meaning of the phrase "affects a financial institution" in § 3293(2).

Section 3293(2) is just one of several modifications to Title 18 enacted through the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. 101–73, 103 Stat. 183, in response to the savings and loans crisis in the 1980s—a period in which over 1,000 banks failed, in part, from the "fraudulent activities on the part of officers, directors, borrowers, accounting and law firms, and others associated with the depository institutions."[6] FIRREA sought, among other things, to arm the Department of Justice with the tools necessary to respond to this expansive insider bank fraud, including through Section 961 which "extends the statute of limitations period from five years to ten years for specified banking offenses, and applies

---

[5] As set forth in the first motion to dismiss and defendants' reply brief in support thereof, defendants disagree that that indictment alleges any scheme to "obtain" shareholders' or the investing public's money or property. *See* Docs. 129, 132.

[6] U.S. Gov't Accountability Office, GAO/T-GGD-90-61, Savings and Loan Crisis: Federal Response to Fraud in Financial Institutions (1990).

the new period retroactively to offenses for which the present statute of limitations period has not

expired." *See* H.R. Rep. No. 101-54, 472 (1989). At the time, this "longer period of limitations

[was] necessary because of the enormous backlog of thousands of currently pending investigations

and prosecutions and the complexity of many of the cases" of depository institution fraud. *Id.*

This ten-year statute of limitations remains codified today at 18 U.S.C. § 3293, a statute

entitled "Financial institution offenses." And among those "financial institution offenses" (or, in

the language of the House Committee Report, "specified banking offenses," H.R. Rep. No. 101-

54, 472 (1989) ) to which it applies is a "violation of, or a conspiracy to violate . . . section 1341

or 1343, if the offense affects a financial institution." 18 U.S.C. § 3293(2). Section 1343, in turn,

provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, transmits or causes to be transmitted by means of wire,
> radio, or television communication in interstate or foreign commerce, any writings,
> signs, signals, pictures, or sounds for the purpose of executing such scheme or
> artifice, shall be fined under this title or imprisoned not more than 20 years, or both.
> If the violation . . . affects a financial institution, such person shall be fined not
> more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1343. In *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court explained

that the second clause of § 1343, "or for obtaining money or property by means of false or

fraudulent pretenses, representations, or promises," rather than setting forth an alternative type of

scheme, simply clarifies the meaning of the first clause prohibiting schemes "to defraud." 483

U.S. at 360. And in *Kelly*, the Supreme Court further clarified the scope of § 1343 in recognizing

"fraudulent schemes violate [the wire fraud statute] only when . . . they are 'for obtaining money

or property,'" so "that property must play more than some bit part in a scheme: It must be an 'object

of the fraud.'" 590 U.S. at 402. "Or put differently, a property fraud conviction cannot stand when

the loss to the victim is only an incidental byproduct of the scheme." *Id.*

Because the wire fraud statute proscribes only a scheme to defraud that has the object of "obtaining" money or property from the victim, *id.*, and because § 3293's title and statutory scheme focus on crimes of fraud *against* financial institutions, the phrase "affects a financial institution" in § 3293(2) means wire fraud schemes that affect a financial institution insofar as the money or property of that institution *is the object* of the scheme to defraud.

This plausible interpretation, on the other hand, contrasts with a broader interpretation of § 3293(2) extending to a wire fraud violation that incidentally "affects" a financial institution merely by subjecting it to an increased risk of loss. *See Martin*, 803 F.3d at 587–88, 590; *United States v. Pelullo*, 964 F.2d 193, 215–16 (3d Cir. 1992) (finding § 3293(2) "broadly applies to any act of wire fraud 'that affects a financial institution.'"). Because the term "affects" is subject to at least two interpretations, the Court is "left to resolve that ambiguity." *Robinson*, 519 U.S. at 345.

**B.    The statutory scheme surrounding, and legislative history underlying, § 3293(2) supports the narrower interpretation of "affects."**

Construing § 3293(2)'s appropriate scope is a "holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) (cleaned up). The statutory scheme surrounding the language of § 3293(2) roundly supports a narrower construction of § 3293(2) that extends the ten-year statute of limitations only to wire fraud schemes with a financial institution's money or property as their object.

First, there is, again, the actual title of § 3293: "Financial institution offenses." The language "financial institution offenses" most naturally suggests § 3293 extends only to criminal offenses *against* financial institutions. *See INS v. Nat'l Ctr. for Immigrants' Rights*, 502 U.S. 183,

189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").  The statute's legislative history is similarly explicit that FIRREA's purposes included "to provide for improved supervision and enhanced enforcement powers and increase criminal and civil money penalties for *crimes of fraud against financial institutions and depositors*."  *See* H.R. Rep. No. 101-54, 322 (1989) (emphasis added).  *See United States v. Pub. Utils. Com*., 345 U.S. 295, 315 (1953) ("Where the words are ambiguous, the judiciary may properly use the legislative history to reach a conclusion.").  The Congressional record is also replete with references to "*banking* offenses" within FIRREA's object, revealing—again—Congress's focus on crimes committed against financial institutions.  *See, e.g.,* H.R. Rep. No. 101-54, 401 (1989) ("Section 961(l)(1) adds a new section (3293) to chapter 213 of title 18 of the U.S. Code to provide a 10–year statute of limitations for *banking offenses*. The present statute of limitations period is five years.") (emphasis added); *id*. at 472 ("Section 961 extends the statute of limitations period from five years to ten years for specified *banking offenses* . . . .") (emphasis added).

A wire fraud scheme that has no financial institution's money or property as its object, but merely incidentally exposes the institution to an "increased risk of loss," cannot reasonably be considered a "financial institution offense" or a "banking offense."  This is because *Kelly* made clear that a scheme that results in or contemplates a deprivation of a traditional property interest, like money, is not a wire fraud scheme if the loss to the victim was an "incidental byproduct" of the scheme.  *Kelly*, 590 U.S. at 402.  Or said differently, an increased risk of loss to a bank that is simply incidental to a scheme that has as its object the money or property of another victim is not a wire fraud offense as to the bank and thus not a "financial institution offense."

Conversely, a fraud scheme that has as its object obtaining a financial institution's money or property is definitionally a "financial institution offense."  Because only this species of wire

fraud is naturally considered a "financial institution offense" and a "banking offense," the statutory scheme surrounding, and legislative history underlying, § 3293(2) supports an interpretation that limits this statute to wire fraud schemes with financial institution money or property as their object.

### C. The substantive effect of the narrower interpretation of § 3293(2) is more compatible with the statutory scheme than the broader interpretation.

An inquiry of whether "only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law," *Timbers*, 484 U.S. at 371, also supports a narrower construction of § 3293(2)'s "affects a financial institution" language because only this construction is compatible with the legislative purpose of statutes of limitations generally and the scope of the wire fraud offense that is the predicate of § 3293(2).

"The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie*, 397 U.S. at 114.[7]   The "acts the legislature has decided to punish by criminal sanctions," *id.*, under § 1343 are "deceptive schemes to deprive the victim of money or property" where an "object of [the] fraud was property." *Kelly*, 590 U.S. at 398.  Because it is only that particular act Congress decided to punish under § 1343, and because the purpose of a ten-year statute of limitations under § 1349 is to temporally limit exposure to prosecution for *those particular acts* that violate § 1343, *see Toussie*, 397 U.S. at 114, applying § 3293(2) only to schemes that have a financial institution's money or property as the "object" of the fraud affords

---

[7] The Court has further explained "[s]uch a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie*, 397 U.S. at 114 (internal quotations and citations omitted).

due recognition to the conduct § 1343 actually proscribes and is consistent with the Congressional purpose in creating a statute of limitations specific to the conduct criminalized under that statute.

On the other hand, the substantive effect of the broader interpretation of § 3293(2) is in stark tension with these concepts. Extending § 3293(2) to a scheme that does not have a financial institution's money or property as its object, but only exposes a financial institution to an increased risk of loss as an incidental byproduct of the scheme, would subject defendants charged with such schemes to a statute of limitations *twice as long* as (and custodial and financial penalties significantly greater than) an ordinary § 1343 offense solely on account of conduct that is not even violative of § 1343. *See Kelly*, 590 U.S. at 402 ("[A] property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme."). Given, again, a statute of limitation's purpose in limiting "exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions," *Toussie*, 397 U.S. at 114, it is illogical that an extended statute of limitations would apply under § 1343 based solely on the occurrence of acts Congress *did not* decide to punish under § 1343.

> **D. Should any doubt remain that the narrower interpretation is required over the broader interpretation of § 3293(2), that doubt must be construed in favor of the narrower construction.**

Although the principles outlined *supra* support application of the narrower interpretation of § 3293(2), if there remains any question of which interpretation should apply that doubt must be resolved in defendants' favor for at least three independent reasons.

For starters, Congress "has declared a policy" that § 3282(a)'s five-year "statute of limitations should not be extended 'except as otherwise expressly provided by law.'" *Toussie*, 397 U.S. at 115 (quoting 18 U.S.C. § 3282). Accordingly, any exception to this five-year statute of limitations must be narrowly construed. *See Scharton*, 285 U.S. at 521–22 (noting an "excepting

clause" to a statute of limitations is to be "narrowly construed").  Because § 3293(2) is one such excepting provision to the general five-year statute of limitations applicable "[e]xcept as otherwise expressly provided by law," 18 U.S.C. § 3282(a), it must be narrowly construed in favor of the defendants' proposed interpretation that applies § 3293(2) only to violations of § 1343 that have as their object money or property of a financial institution.

Beyond this, all "criminal limitations statutes are 'to be liberally interpreted in favor of repose . . . .'" *Habig*, 390 U.S. at 227 (citing *Scharton*, 285 U.S. at 522).  "This rule comports with the policy rationale behind such statutes by (1) 'protect[ing] individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time,' (2) 'minimiz[ing] the danger of official punishment because of acts in the far-distant past,' and (3) 'encouraging law enforcement officials promptly to investigate suspected criminal activity.'"  *United States v. Kozeny*, 541 F.3d 166, 171-72 (2d Cir. 2008) (quoting *Toussie*, 397 U.S. at 114–15).  Accordingly, between two competing plausible interpretations of a statute of limitations, the one that errs toward repose—here, defendants' proposed construction that limits § 3293(2) to wire fraud offenses with financial institution money or property as their object—must be adopted. *Id.*

Finally, there is the bedrock principle that, "[i]n the construction of a penal statute, it is well settled . . . that all reasonable doubts concerning its meaning ought to operate in favor of the respondent." *Harrison v. Vose*, 50 U.S. 372, 378 (1850).  *Accord Wooden v. United States*, 595 U.S. 360, 395 (2022) (Gorsuch, J., concurring) ("Where the traditional tools of statutory interpretation yield no clear answer," the "next step is to lenity.  As Justice Story explained, because 'penal statutes are construed strictly . . . forfeitures are not to be inflicted by straining the words

15

so as to reach some conjectural policy.'") (*quoting United States v. Open Boat*, 27 F. Cas. 354, 357, F. Cas. No. 15968 (No. 15,968) (CC Me. 1829)).

Each of these guiding rules and canons independently (and most certainly jointly) support the interpretation of § 3293(2) that limits its scope only to wire fraud offenses with financial institution money or property as their object. Because the indictment indisputably alleges no such offense, § 3293(2) does not apply to Counts 1, 7, or 8, and each of these charges are subject to a five-year statute of limitations under § 3282.

**III.** 

















██████████████████████████████████

████████

## **CONCLUSION**

Each of the charges alleged in the indictment are subject to a five-year statute of limitations that expired before the indictment was returned in this case. Accordingly, the defendants respectfully request that the Court grant the instant joint motion and dismiss the indictment.


Date:   November 22, 2024                    Respectfully submitted,


                                             /s/ *Jack W. Selden* (with permission)
                                             Jack W. Selden
                                             Bradley Arant Boult Cummings LLP
                                             One Federal Place
                                             1810 Fifth Avenue North
                                             Birmingham, AL 35203
                                             (205) 521-8472
                                             jselden@bradley.com

                                             Gregory G. Marshall (admitted *pro hac vice*)
                                             Erin K. Sullivan
                                             Bradley Arant Boult Cummings LLP
                                             1615 L Street NW, Suite 1350
                                             Washington, DC 20036
                                             (202) 393-7150
                                             gmarshall@bradley.com
                                             esullivan@bradley.com

                                             *Counsel for Craig D. Perciavalle*

                                             /s/ *James R. Sturdivant* (with permission)
                                             James R. Sturdivant
                                             Robert R. Baugh
                                             Alyse N. Windsor
                                             Dentons Sirote PC
                                             2311 Highland Avenue South
                                             Birmingham, AL 35205
                                             (205) 930-5100
                                             jim.sturdivant@dentons.com

robert.baugh@dentons.com
alyse.windsor@dentons.com

*Counsel for Joseph A. Runkel*

/s/ *Frederick G. Helmsing, Jr.*
Frederick G. Helmsing, Jr.
T. Hart Benton, III
Jones Walker LLP
11 North Water St., Ste. 1200
Mobile, AL 36602
T: 251.432.1414
F: 251.433.4106
fhelmsing@joneswalker.com
hbenton@joneswalker.com

*Counsel for William O. Adams*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2024, I electronically filed the foregoing joint motion to dismiss the indictment with the Clerk of the Court using the Court's CM/ECF system.

/s/ *Frederick G. Helmsing, Jr.*