## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      v.

CRAIG D. PERCIAVALLE,
JOSEPH A. RUNKEL, and
WILLIAM O. ADAMS,

           Defendants.

Criminal Action No. 1:23-CR-00070-JB-N

## DEFENDANTS' REPLY IN SUPPORT OF SECOND
## JOINT MOTION TO DISMISS THE INDICTMENT

## TABLE OF CONTENTS

1.  The dictionary definition of "affects" does not resolve whether 18 U.S.C. § 3293(2) is ambiguous. ........................................................................................................................ 1

2.  The statutory context of 18 U.S.C. § 3293(2) supports defendants' construction of "affects a financial institution" or, at a minimum, reveals an ambiguity................................................ 2

3.  The authorities the government cites that applied a broad definition of "affects a financial institution" did not consider defendants' arguments and do not establish § 3293(2) is unambiguous. ......................................................................................................................... 7

4.  ███████████████████████████████████████████████████████
    ███████████████████████████████████████████████████████
    ███████. .....................................................................................................11

5.  ███████████████████████████████████████████████████████
    ███████████. ............................................................................................. 14

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Kelly v. United States*, 590 U.S. 391 (2020) ............................................................ 7, 8

*Legal Envtl. Assistance Found., Inc. v. EPA*, 276 F.3d 1253 (11th Cir. 2001) ............................ 14

*Loughrin v. United States*, 573 U.S. 351 (2014) ............................................................ 9

*McCreary v. Offner*, 172 F.3d 76 (D.C. Cir. 1999) ............................................................ 5

*McNally v. United States*, 483 U.S. 350 (1987) ............................................................ 9

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ............................................................ 2

*United States v. Agne*, 214 F.3d 47 (1st Cir. 2000) ............................................................ 9

*United States v. Bischel*, 61 F.3d 1429 (9th Cir. 1995) ............................................................ 12

*United States v. Bouyea*, 152 F.3d 192 (2d Cir. 1998) ............................................................ 9

*United States v. Broughton*, 689 F.3d 1260 (11th Cir. 2012) ............................................................ 14

*United States v. Griffin*, 76 F.4th 736 (7th Cir. 2023) ............................................................ 7, 8

*United States v. Hoffecker*, 530 F.3d 137 (3rd Cir. 2008) ............................................................ 12, 13

*United States v. Jenkins*, 633 F.3d 788 (9th Cir. 2011) ............................................................ 12

*United States v. Kozeny*, 541 F.3d 166 (2d Cir. 2008) ............................................................ 11, 13, 14

*United States v. Martin*, 803 F.3d 581 (11th Cir. 2015) ............................................................ 7

*United States v. Pelullo*, 964 F.2d 193 (3d Cir. 1992) ............................................................ 9

*United States v. Rojas*, 824 Fed. Appx. 600 (11th Cir. 2020) ............................................................ 7

*United States v. Torres*, 318 F.3d 1058 (11th Cir. 2003) ............................................................ 13

*United States v. Ubakanma*, 215 F.3d 421 (4th Cir. 2000) ............................................................ 9

*United States v. Winslow*, No. 23-12230, 2024 WL 3595909 (11th Cir. July 31, 2024) ............................ 14

*United States v. Yates*, 733 F.3d 1059 (11th Cir. 2013) ............................................................ 2

*Yates v. United States*, 574 U.S. 528 (2015) ............................................................ 1, 3, 11

**Statutes**

18 U.S.C. § 1014 ............................................................ 5

18 U.S.C. § 3292 ............................................................ 11

18 U.S.C. § 3293(2) ............................................................ 2

18 U.S.C. §§ 1007 ............................................................ 5

**Other Authorities**

135 Cong. Rec. S4296 (daily ed. April 19, 1989) ............................................................ 4

162 Cong. Rec. H571 (daily ed. Feb. 4, 2016) ............................................................ 5

Financial Institutions Reform, Recovery and Enforcement Act of 1989, S. 413, 135 Cong. (1989) ............................................................ 4

Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. 101-73, 103 Stat. 183 ............................................................ 3

H.R. Rep. No. 101-54 (1989) ............................................................ 4

Legislative History of Financial Institutions Reform, Recovery, and Enforcement Act of 1989: P.L. 101-73, 103 Stat. 183 (1989) ............................................................ 4

U.S. Gov't Accountability Office, GAO/T-GGD-90-61, Savings and Loan Crisis: Federal Response to Fraud in Financial Institutions (1990) ............................................................ 6

Defendants Craig Perciavalle, Joseph Runkel, and William Adams (collectively, "defendants"), by their counsel, hereby submit this reply to the government's response in opposition (the "Response") [Doc. 138] to defendants' Second Joint Motion to Dismiss the Indictment (the "Motion") [Doc. 133].  For the reasons set forth below and those in the Motion, the indictment is due to be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) based on the expiration of the statutes of limitations applicable to each charge.

1. **The dictionary definition of "affects" does not resolve whether 18 U.S.C. § 3293(2) is ambiguous.**

The government contends any statutory analysis of 18 U.S.C. § 3293(2) begins and ends with the dictionary definition of "affects."  [Response, pp. 8–9.]  Namely, the government argues *Black's Law Dictionary* and *Merriam-Webster's Dictionary* define the verb "affects" as to "produce an effect" on or "influence," so § 3293(2) is "plain and unambiguous" such that a mail or wire fraud offense must simply "'produce an effect on' or 'influence' a financial institution."  [*Id.*]

The Court may not, however, cabin its construction of § 3293(2) to dictionary definitions, as the Supreme Court instructed in *Yates v. United States*, 574 U.S. 528 (2015).  There, the defendant, a commercial fisherman, caught undersized red grouper in the Gulf of Mexico and ordered a crew member to toss the suspect catch overboard to prevent federal authorities from confirming he had harvested undersized fish.  The defendant was charged, convicted, and sentenced for violating 18 U.S.C. § 1519, which provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

Yates appealed his conviction on grounds that a red snapper was not a "tangible object" as that

1

term is properly understood in § 1519, arguing it "'only applies to records, documents, or tangible items that relate to recordkeeping' and 'does not apply to . . . fish.'"  *United States v. Yates*, 733 F.3d 1059, 1064 (11th Cir. 2013).  The Eleventh Circuit disagreed and concluded the term "tangible object" was "unambiguous," pointing to *Black's Law Dictionary* as defining "tangible" as "[h]aving or possessing physical form," which fish surely do.  *Id.*

The Supreme Court held the Eleventh Circuit erred, explaining in the plurality opinion that "[w]hether a statutory term is unambiguous . . . does not turn solely on dictionary definitions of its component words."  574 U.S. at 537.  "Rather, 'the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole.'"  *Id.* (quoting *Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997) (cleaned up)).  "In short," the plurality found, "although dictionary definitions of the words 'tangible' and 'object' bear consideration, they are not dispositive of the meaning of 'tangible object' in § 1519."  *Id.* at 538.

Here, too, the dictionary definition of the term "affects" is not "dispositive" of the meaning of "affects a financial institution" in 18 U.S.C. § 3293(2) or toward answering whether this phrase suffers from ambiguity.  To resolve these questions, the Court must look beyond the dictionary and consider the statutory context of § 3293(2), beginning (as the Supreme Court did in *Yates*) with the statutory heading and second title.

**2.  The statutory context of 18 U.S.C. § 3293(2) supports defendants' construction of "affects a financial institution" or, at a minimum, reveals an ambiguity.**

Turning back to *Yates*, there the Court found § 1519's caption ("Destruction, alteration, or falsification of records in Federal investigations and bankruptcy") conveyed "no suggestion that

Case 1:23-cr-00070-JB-N    Doc# 146    Filed 01/06/25    Page 6 of 20    PageID# 758

the section prohibits spoliation of any and all physical evidence, however remote from records."[1] 574 U.S. at 540.  The Court also looked to the "title of the section of the Sarbanes-Oxley Act in which § 1519 was placed" (titled "Criminal penalties for altering documents") and concluded that "[w]hile these headings are not commanding, they supply clues that Congress did not intend 'tangible object' to sweep within its reach physical objects of every kind, including things no one would describe as records, documents, or devices closely associated with them." *Id.*  In sum, "[i]f Congress indeed meant to make § 1519 an all-out encompassing ban on the spoliation of evidence . . . one would have expected a clearer indication of that intent." *Id.*

Mapping these principles onto 18 U.S.C. § 3293, as explained in defendants' Motion, § 3293's heading, "Financial institution offenses," "most naturally suggests § 3293 extends only to criminal offenses *against* financial institutions." [Motion, p. 11.][2]  The government argues defendants "provide no textual support" for a reading of "financial institution offenses" as meaning "criminal offenses *against* financial institutions." [Response, p. 13.]  But the textual support is in the text itself: "financial institution offenses" is a noun phrase where "offenses" is the primary noun and "financial institution" is a noun phrase modifier that describes the type of "offenses" at issue.

This interpretation is also supported by FIRREA's drafting history from which the Act's language "financial institution offenses" originated.  The phrase "financial institution offenses" was included in the first draft of FIRREA, at the time in Section 915 of the bill entitled "Increased Criminal Penalties and Civil Penalties for Certain Financial Institution Offenses."  Financial

---

[1] Although *Yates* was a plurality opinion, Justice Alito agreed in a separate concurrence that "§ 1519's title . . . points toward filekeeping, not fish."  574 U.S. at 552 (Alito, J., concurring).
[2] This is further buttressed by the title of § 961 of FIRREA (the section of FIRREA in which § 3293 was placed): "Increased Criminal Penalties for Certain Financial Institution Offenses."  FIRREA, Pub. L. 101-73, 103 Stat. 183.

3

Institutions Reform, Recovery and Enforcement Act of 1989, S. 413, 135 Cong. (1989) (as reported at 135 Cong. Rec. 2426 (1989)). Notably, the statutory purpose for this portion of FIRREA was stated as follows: "to increase criminal and civil money penalties for crimes of fraud *against financial institutions* and depositors." *Id.* at § 101 (as reported at 135 Cong. Rec. 2426 (1989)) (emphasis added). This is the precise concept defendants advance in the Motion. The original Section 915 in this first draft of FIRREA was moved to Section 961 in a subsequent version published in the May 16, 1989 Report of the House Committee on Banking, Finance and Urban Affairs in the Senate, but Section 961 maintained the same heading ("Increased Criminal Penalties for Certain Financial Institution Offenses") and the bill expressed the similar purpose "[t]o provide for improved supervision and enhanced enforcement powers and increase criminal and civil money penalties for fraud *against financial institutions* and depositors." H.R. Rep. No. 101-54, at 6, 255 (1989).

Beyond the text, there is also evidence in the legislative record that members of Congress and the Bush administration understood the criminal enhancement components of FIRREA were focused on criminal offenses *against* financial institutions. *E.g.*, 135 Cong. Rec. S4296 (daily ed. April 19, 1989) (statement of Sen. Pietro V. Domenici) ("I am particularly supportive of the provision of the bill that strengthens and increases penalties for fraud *against* financial institutions.") (emphasis added); Legislative History of Financial Institutions Reform, Recovery, and Enforcement Act of 1989: P.L. 101-73, 103 Stat. 183, 66 (1989) (Feb. 23, 1989 Testimony of N. Brady, Secretary of Dep't of Treasury Before the House Committee on Banking, Finance and Urban Affairs) ("Never again should fraud committed *against financial institutions* or depositors be punished as if it were a victimless white-collar crime") (emphasis added). The legislative record also reflects that even as recently as 2016 it has been understood within Congress that the "intent

of the statute" was "penalizing fraud *against or by* financial institutions." 162 Cong. Rec. H571 (daily ed. Feb. 4, 2016) (statement of Rep. Blaine Luetkemeyer) (emphasis added).[3]

The government contends that interpreting "financial institution offenses" to mean offenses against financial institutions is refuted by the fact that "[s]ome of the enumerated offenses in § 3293(1) clearly do not require that any financial institution be the object or intended victim of the violation," asserting 18 U.S.C. §§ 1007 and 1014 "prohibit the making of a false statement with the purpose of influencing regulators like the FDIC or the Federal Housing Administration." [Response, p. 13.] As a threshold matter, § 1014 does not merely prohibit the making of a false statement with the purpose of influencing the FDIC or Federal Housing Administration, but includes making a false statement for the purpose of influencing "any institution the accounts of which are insured by the Federal Deposit Insurance Corporation"—i.e., a financial institution. 18 U.S.C. § 1014. While §§ 1007 and 1014 extend to the wrongful influencing of the FDIC (under §§ 1007 and 1014) and other federal financial institution regulators (under § 1014), the inclusion of these offenses in § 3293 was entirely consistent with Congress's focus on combatting criminal offenses against financial institutions. It was recognized at the time of FIRREA's enactment that "[t]he federal bank and thrift regulators—FDIC, the Office of the Comptroller of the Currency (OCC), the Federal Reserve System, and the Office of Thrift Supervision (OTS)—are the federal

---

[3] Post-enactment legislative history may be considered in evaluating whether a statute is ambiguous. *See McCreary v. Offner*, 172 F.3d 76, 82 (D.C. Cir. 1999) ("Although post-enactment legislative history may or may not be a valid tool for ascertaining congressional intent, *see United States v. Carlton*, 512 U.S. 26, 39, 129 L. Ed. 2d 22, 114 S. Ct. 2018 (1994) (Scalia, J., concurring) (referring to 'post-legislation legislative history' as an 'oxymoron'), our task here is not to divine conclusively the meaning of section 1396a(n), but rather to determine whether it is reasonably susceptible to more than one meaning. With respect to this question, post-enactment legislative commentary offering a plausible interpretation is certainly relevant, much like plausible interpretations from litigants, other courts, law review articles, or any other source would be. The fact that the 1988 and 1989 House Reports interpreted section 1396a(n) differently from the interpretation favored by the [plaintiffs] suggests that the statute is far from unambiguous.").

government's first line of defense against illegal activities and/or wrongdoing associated with banks and thrifts. The regulators are responsible for examining and supervising banks and thrifts to ensure that they are operating in a safe and sound manner and in compliance with applicable laws and regulations." U.S. Gov't Accountability Office, GAO/T-GGD-90-61, Savings and Loan Crisis: Federal Response to Fraud in Financial Institutions (1990). In addition, the cost of thrift failures caused by fraud on these financial institutions were estimated at the time of FIRREA's enactment to be "as much as $500 billion," with the reality that "taxpayers [would] have to pay for most of it" in the form of federally insured deposit protections through the FDIC and Federal Savings and Loan Insurance Corporation. *Id.* Accordingly, it was natural that Congress, through FIRREA, expanded criminal penalties and enforcement mechanisms for wrongfully influencing federal financial institution regulators within its focus of combatting crimes *against* financial institutions.

Simply put, the government's emphasis on the inclusion of §§ 1007 and 1014 within § 3293 does nothing to suggest § 3293 is unambiguous, which is the ultimate question the Court faces. Given FIRREA's original drafters' expressed purpose "to increase criminal and civil money penalties for crimes of fraud *against financial institutions* and depositors" through a section entitled "Increased Criminal Penalties and Civil Penalties for Certain Financial Institution Offenses," coupled with the pre-enactment and post-enactment legislative histories noted above and in the Motion that reflect a focus on crimes perpetrated *against* financial institutions, along with the reality (as explained at p. 13 of the Motion) that the substantive effect of the government's broad interpretation is incompatible with the statutory scheme, there is ample statutory and legislative context from which to conclude the following: that when Congress elected to include §§ 1341 and § 1343 in § 3293(2) to the extent these offenses "affect a financial institution," what

Congress intended was a mail or wire fraud offense committed against a financial institution.

**3.    The authorities the government cites that applied a broad definition of "affects a financial institution" did not consider defendants' arguments and do not establish § 3293(2) is unambiguous.**

As defendants acknowledged in their Motion, and as the government identifies in its response, the Eleventh Circuit held in *United States v. Martin*, 803 F.3d 581 (11th Cir. 2015), that a financial institution is "affected" by a scheme to defraud for purposes of the enhanced penalty provisions of 18 U.S.C. §§ 1341 and 1343 where the scheme resulted in an "increased risk of loss," and this conclusion was later applied in an unreported decision, *United States v. Rojas*, 824 Fed. Appx. 600 (11th Cir. 2020), to the similar "affects a financial institution" language in 18 U.S.C. § 3293(2).  The government also correctly cites other circuit court opinions that have held § 3293(2)'s "affects a financial institution" language does not require a financial institution be the intended victim of a mail or wire fraud offense.

But none—not one—of these authorities considered the argument in defendants' Motion: that because the necessary tools of statutory construction suggest an intention within FIRREA that § 3293(2) apply to mail and wire fraud offenses against financial institutions, and because the Supreme Court clarified in *Kelly v. United States*, 590 U.S. 391 (2020), that mail and wire fraud occur only where the "object of the fraud" is to obtain the victim's money or property (such that a property "fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme"), 590 U.S. at 402, then a scheme that does not have a financial institution's money or property as its object is beyond the reach of § 3293(2).

Of all the authorities the government cites that applied the "affects a financial institution" language under either § 3293(2) or §§ 1341 or 1343, only two post-date the *Kelly* decision: *Rojas*, 824 Fed. Appx., and *United States v. Griffin*, 76 F.4th 736 (7th Cir. 2023).  *Rojas* contains no

mention of *Kelly* at all. And *Griffin*'s analysis actually relies on a statement of law that is incongruous with *Kelly*'s core holding mentioned above. Namely, in *Griffin* the Seventh Circuit's interpretation of § 3293(2) drew from a pre-*Kelly* precedent holding that the "object of the fraud" is not an element of the mail or wire fraud:

> We have explained that in a wire fraud case the "object of the fraud is not an element of the offense." *United States v. Marr*, 760 F.3d 733, 743–44 (7th Cir. 2014) (quoting *United States v. Pelullo*, 964 F.2d 193, 216 (3d Cir. 1992)). Therefore, to convict someone of wire fraud affecting a financial institution, "the wire fraud statute only requires the government to prove that a defendant intended for his or her scheme to defraud someone[;] a financial institution does not need to be the intended victim." *Id.* at 744.

76 F.4th at 736–37. But *Kelly*, contrary to this earlier precedent, recognized that the relationship of the scheme's object to the scheme's victim is indeed a necessary element of the mail and wire fraud offenses. *See Kelly*, 590 U.S. at 392 (holding that "while a government's right to its employees' time and labor is a property interest, the prosecution must also show that it is an 'object of the fraud.'").

*Kelly*'s recognition that a victim's money or property must be the "object of the fraud," *id.* at 402—and, correspondingly, that "a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme," *id.*—is irreconcilable with understanding a scheme that has no object of obtaining a financial institution's money or property as being within the class of "financial institution offenses" to which § 3293 applies. And because *Kelly*'s conceptualization of property fraud in this manner is irreconcilable with the broader framing of § 3293 in prior opinions, they need not be followed. [*See* Motion, p. 8 n.4.][4]

---

[4] The government correctly notes *Kelly* does not explicitly address "the proper interpretation of § 3293(2) or the 'affects a financial institution' language as it is used in any context." [Response, p. 11.] What *Kelly* did address, however, is how the mail and wire fraud statues are to be applied when a victim's loss is merely an incidental byproduct of a scheme, which is that these statutes have no application under such circumstances at all. Certainly, Supreme Court precedent

Many of the governments' authorities applying the "affects a financial institution language" under §§ 3293(2), 1341, and 1343 suffer from another deficiency as well, as they generally fall within two camps: (i) opinions that stopped at a dictionary-definition or similar common-meaning understanding of the word "affects" without consideration of § 3293(2)'s statutory context[5] (which the Supreme Court admonished against in *Yates*), and (ii) opinions that rely on the opinions in the former camp without engaging in additional statutory analysis.[6]

It also cannot be overlooked that history is replete with instances where even a seemingly critical mass of circuit courts applied a statute in one manner that was later determined to have been contrary to Congress's original intent. Prior to *McNally v. United States*, 483 U.S. 350 (1987), for instance, an oft-litigated issue was whether the mail fraud statute's language, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," was framed disjunctively to cover both schemes "to defraud" and separately "for obtaining money or property." "And at that time, *every Court of Appeals* to have addressed the issue had concluded" that these two phrases "must be read 'in the disjunctive' and 'construed independently.'" *Loughrin v. United States*, 573 U.S. 351, 660 (2014) (emphasis added) (citation omitted). But the Supreme Court in *McNally* found all these opinions in error, concluding it evident from § 1341's legislative history "that Congress added the mail fraud statute's second, money-or-property clause merely to affirm

---

interpreting the scope of a particular statutory offense is instructive on the framing of other statutes that expressly depend on the underlying offense, as is the case here.

[5] *United States v. Agne*, 214 F.3d 47, 51 (1st Cir. 2000) (focusing statutory analysis of § 3293(2) on definition of "affects" in *The Random House Dictionary of the English Language*); *United States v. Pellulo*, 964 F.2d 193, 216 (3d Cir. 1992) (opining § 3293(2) "broadly applies to any act of wire fraud 'that affects a financial institution'" without discussing statutory context).

[6] *United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998) (applying *Pellulo*, 964 F.2d, without engaging in further statutory analysis); *United States v. Ubakanma*, 215 F.3d 421, 426 (4th Cir. 2000) (citing *Bouyea*, 152 F.3d, and *Pellulo*, 964 F.2d).

a decision of ours interpreting the ban on schemes 'to defraud': The second clause, *McNally* reasoned, thus worked no substantive change in the law." *Id.*

That circuit courts have construed § 3293(2) in one manner is, in other words, not dispositive of the question at hand—particularly where those courts did not consider the arguments defendants' Motion raises, were decided prior to *Kelly*'s clarification of the "object of the fraud" requirement under §§ 1341 and 1343, and largely stopped short of the more rigorous statutory analysis *Yates* requires and which defendants advance in their Motion and herein. In short, looking (as the Court must) beyond the dictionary definition of "affects," it is inescapable from due consideration of all relevant factors (here, § 3293's statutory context, FIRREA's legislative history, the substantive effect of both interpretations within the statutory scheme, and *Kelly*'s recognition that mail and wire fraud does not exist where a victim's loss is an incidental byproduct of a scheme to deceive) that there is an ambiguity in what a mail or wire offense that "affects a financial institution" really means in the context of § 3293.

Although defendants propose that § 3293(2) be interpreted narrowly to extend only to a scheme that has financial institution money or property as its object based on the canons of statutory analysis outlined in the Motion, should any doubt remain as to § 3293(2)'s scope it must be resolved in defendants' favor for the three reasons independently set forth in Section II(D) of the Motion. Not the least of these is the rule of lenity: an interpretive principle that is of particular relevance here where the government urges an application of § 3293(2) to a scheme that does not have a financial institution's money or property as its object, but only exposes a financial institution to an increased risk of loss as an incidental byproduct of the scheme, and would subject defendants and others charged with such schemes to a statute of limitations *twice as long* as (and custodial and financial penalties significantly greater than) an ordinary § 1343 offense solely on

10

account of conduct that is not even violative of § 1343.  At a minimum, "[i]n determining the meaning of ["affects a financial institution" in § 3293(2)], it is appropriate, before [the Court chooses] the harsher alternative, to require that Congress should have spoken in language that is clear and definite."  *Yates*, 574 U.S. at 548 (quotations and citation omitted).

**4.** ██████████████████████████████████████████
██████████████████████████████████████████
████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████████

████████████████████████████





14

**CONCLUSION**

Each of the charges alleged in the indictment is subject to a five-year statute of limitations that expired before the indictment was returned in this case. Accordingly, the defendants respectfully request that the Court grant the Second Joint Motion to Dismiss the Indictment.

15

Date:   January 6, 2025                     Respectfully submitted,


                                            /s/ *Jack W. Selden* (with permission)
                                            Jack W. Selden
                                            Bradley Arant Boult Cummings LLP
                                            One Federal Place
                                            1810 Fifth Avenue North
                                            Birmingham, AL 35203
                                            (205) 521-8472
                                            jselden@bradley.com

                                            Gregory G. Marshall (admitted *pro hac vice*)
                                            Erin K. Sullivan
                                            Bradley Arant Boult Cummings LLP
                                            1615 L Street NW, Suite 1350
                                            Washington, DC 20036
                                            (202) 393-7150
                                            gmarshall@bradley.com
                                            esullivan@bradley.com


                                            *Counsel for Craig D. Perciavalle*


                                            /s/ *James R. Sturdivant* (with permission)
                                            James R. Sturdivant
                                            Robert R. Baugh
                                            Alyse N. Windsor
                                            Dentons Sirote PC
                                            2311 Highland Avenue South
                                            Birmingham, AL 35205
                                            (205) 930-5100
                                            jim.sturdivant@dentons.com
                                            robert.baugh@dentons.com
                                            alyse.windsor@dentons.com


                                            *Counsel for Joseph A. Runkel*


                                            /s/ *T. Hart Benton, III*
                                            Frederick G. Helmsing, Jr.
                                            T. Hart Benton, III
                                            Jones Walker LLP
                                            11 North Water St., Ste. 1200
                                            Mobile, AL 36602
                                            T: 251.432.1414

16

F: 251.433.4106
fhelmsing@joneswalker.com
hbenton@joneswalker.com

Avery B. Pardee (admitted *pro hac vice*)
Jones Walker LLP
201 St. Charles Ave
New Orleans, LA 70170-5100
T: 504.582.8000
F: 504.582.8583
apardee@joneswalker.com

*Counsel for William O. Adams*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2025, I electronically filed the foregoing reply with the

Clerk of the Court using the Court's CM/ECF system.

/s/ *T. Hart Benton, III*

17